# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

DONALD SHANE BRINK,

                Petitioner,

vs.

TIMOTHY WENGLER,

                Respondent.

Case No. 1:13-cv-00039-EJL

**MEMORANDUM DECISION AND ORDER**

Previously in this matter, the Court determined that a number of Petitioner's claims presented in his Petition for Writ of Habeas Corpus were procedurally defaulted, and, after providing Petitioner with an opportunity to show that either the cause and prejudice exception or the miscarriage of justice exception should be applied to excuse the default of the claims, the Court concluded that Petitioner met neither exception. (Dkts. 31, 39.) The Court also determined that several claims were noncognizable. (Dkt. 31.) Petitioner now is proceeding to the merits of three claims.

Respondent has filed an Answer and Brief in Support of Dismissal of Petitioner's Petition for Writ of Habeas Corpus, and Petitioner has filed a Reply. (Dkt. 46, 57.)

**MEMORANDUM DECISION AND ORDER - 1**

Having reviewed the record in this matter and considered the parties' arguments, the Court finds that oral argument is unnecessary and enters the following Order.

## CLAIMS AT ISSUE

The following claims are in a proper procedural posture to proceed on the merits:

- Claim One, only as a claim of the violation of the right of access to the court "as guaranteed by the 1st, 5th and 14th Amendments under the Sixth Amendment right to counsel, as well as the Fifth and Fourteenth Amendments (due process clause), and the equal protection clause of the 14th Amendment" based on facts that "the jail deprived Mr. Brink of the legal materials he required to make use of that right or to otherwise participate in his defense." (See State's Lodging C-7, p. 14.)

- Claim Three (2), limited to the subclaims that the jury's exposure to facts not in evidence when the prosecutor showed a video tape recording of the crime scene during his opening statement but did not later ask to have the video admitted into evidence deprived Petitioner of the Sixth Amendment rights to confrontation, cross-examination and assistance of counsel.

- Claim Four, that Petitioner's First, Fifth, Sixth, and Fourteenth Amendment rights were violated because he was not appointed experts to review the evidence, as an ineffective assistance of counsel claim only.

## BACKGROUND

After trial by jury in the Fifth Judicial District Court in Twin Falls County, Idaho, Petitioner was convicted of (1) the first degree murder of Brent Lillevold, (2) being a persistent violator, and (3) a weapons enhancement associated with the crime. He was sentenced to thirty fixed years of incarceration, with life indeterminate. The facts underlying the conviction are set forth in the November 7, 2008 opinion of the Idaho Court of Appeals on direct review. (State's Lodging C-5.) Petitioner has presented an

**MEMORANDUM DECISION AND ORDER - 2**

alternative version of the facts in his brief in support of his petition for review on post-conviction review. (State's Lodging E-23.) This Court has summarized the facts and the evidence presented at trial, including Petitioner's version, in its Order of February 24, 2015, determining that Petitioner did not make a threshold showing of actual innocence.

Petitioner originally was represented by public defenders Marilyn Paul and Jonathan Brody. Petitioner did not believe they were adequately representing him, and thus, they withdrew from the case. Several other attorneys were considered, and eventually Thomas Kershaw was appointed to represent Petitioner at trial. Throughout the trial, Petitioner attempted to file numerous pro se documents while represented by counsel, but the state district court required him to file everything through counsel. After his conviction, Petitioner was appointed new counsel, Greg Silvey, for the direct appeal. Petitioner disagreed with Silvey's decision to present only two claims on appeal.

On post-conviction review, Petitioner initially requested and was appointed counsel, Tim Williams. Petitioner then filed a motion to represent himself, which was granted.  (State's Lodging D-3, pp. 642-74; 679-80.) The post-conviction action was summarily dismissed in state district court—meaning that the court determined the claims were so meritless they should not proceed to an evidentiary hearing.

Petitioner was appointed counsel on appeal of the post-conviction matter, Deborah Whipple, but she withdrew because she found no meritorious issues to present on appeal. Two other attorneys in Petitioner's post-conviction appellate counsel's office

**MEMORANDUM DECISION AND ORDER - 3**

independently reviewed the case and determined that there were no meritorious claims for the post-conviction appeal. (Petitioner's Exhibit Nos. 173, 714.)  Petitioner nevertheless wanted to pursue an appeal of the post-conviction matter, and chose to represent himself on appeal. In the midst of the appeal, he filed a motion to re-appoint counsel, which was denied. Petitioner obtained no relief in state court.

### GENERAL STANDARD OF LAW FOR HABEAS CORPUS RELIEF

Federal habeas corpus relief may be granted where a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where the petitioner challenges a state court judgment in which the petitioner's federal claims were adjudicated on the merits, then Title 28 U.S.C.§ 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applies. Title 28 U.S.C.§ 2254(d) limits relief to instances where the state court's adjudication of the petitioner's claim:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). A federal habeas court reviews the state court's "last reasoned decision" in determining whether a petitioner is entitled to relief. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

**MEMORANDUM DECISION AND ORDER - 4**

Where a petitioner contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1) the petitioner must show that the state court—although it identified "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If fairminded jurists

**MEMORANDUM DECISION AND ORDER - 5**

could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The Supreme Court emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (internal citation omitted).

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

If the state appellate court did not decide a properly-asserted federal claim, if the state court's factual findings are unreasonable under § 2254(d)(2), or if an adequate excuse for the procedural default of a claim exists, then § 2254(d)(1) does not apply, and the federal district court reviews the claim de novo. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). In such a case, as in the pre-AEDPA era, a district court can draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

Under de novo review, if the factual findings of the state court are not unreasonable, the Court must apply the presumption of correctness found in 28 U.S.C. §

**MEMORANDUM DECISION AND ORDER - 6**

2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167. Contrarily, if a state court factual determination is unreasonable, or if there are no state court factual findings, the federal court is not limited by § 2254(e)(1),the federal district court may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014).

## DISCUSSION OF MERITS OF REMAINING CLAIMS

1. **Claim One**

    **A.** *Statement of the Claim*

    Petitioner has been permitted to proceed to the merits of a portion of Claim One—that he was denied his right of access to the court "as guaranteed by the 1st, 5th and 14th Amendments under the Sixth Amendment right to counsel, as well as the Fifth and Fourteenth Amendments (due process clause), and the equal protection clause of the 14th Amendment" based on allegations that "the jail deprived Mr. Brink of the legal materials he required to make use of that right or to otherwise participate in his defense." (See State's Lodging C-7, p. 14.)

    **B.** *Idaho Appellate Court Decision*

    On direct appeal, Petitioner argued that the jail violated his right to access the courts by depriving him of his legal materials during his criminal prosecution and that the trial court denied him the right to access the courts by issuing a pre-filing order prohibiting him from filing pro se motions during the time period he was represented by an attorney. (State's Lodging C-2, p. 30.)

MEMORANDUM DECISION AND ORDER - 7

The Idaho Court of Appeals set forth the governing federal law in the body of its opinion rejecting Petitioner's claims. In *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984), the United States Supreme Court clarified that a trial court is not required to permit a "hybrid" representation of a criminal defendant. The Idaho Court of Appeals affirmed the trial court's decision to require Petitioner to choose either to represent himself *or* to be represented by counsel. (State's Lodging C-5.) Petitioner himself acknowledged on appeal that the United States Supreme Court "has not recognized a right of the type which [Petitioner] attempts to now assert." (*Id.*, p. 11.) The Idaho Court of Appeals concluded that "the district court did not violate his right to access the courts in refusing to accept additional pro se filings while he was represented by counsel." (*Id.*)

### C. *Clearly-Established Federal Law and Discussion*

On federal habeas review, Respondent argues that there is no clearly-established law from the United States Supreme Court establishing the right of a *represented* criminal defendant to separately access the courts through an adequate jail access-to-courts program. The Court's independent research supports Respondent's position. As the Idaho Court of Appeals recognized, *McKaskle v. Wiggins* does not provide a legal basis for Petitioner's claims. Nor does *Faretta v. California*, 422 U.S. 806 (1975), which established a Sixth Amendment right of a defendant to represent himself pro se if he desired; there, the United States Supreme Court did not decide whether implied in that right is a corresponding right to access a law library. Even if such a right existed,

**MEMORANDUM DECISION AND ORDER - 8**

Petitioner's case differs from *Faretta* because Petitioner was not representing himself pro se, but desired a hybrid-type representation alongside his appointed counsel.

Contrary to Petitioner's position that federal habeas corpus relief is warranted on his novel claim is the case of *Kane v. Garcia Espitia*, 546 U.S. 9 (2005). There, the Supreme Court reversed the Ninth Circuit Court, which had ordered that habeas corpus relief be granted to a California criminal defendant who had chosen to proceed pro se in a felony criminal case but had received no law library access while in jail, despite a court order to the contrary. The Supreme Court held that habeas relief was not warranted, because no clearly established federal law existed to govern the issue, and "*Faretta* sa[id] nothing about any specific legal aid that the State owes a pro se criminal defendant." (*Id*. at 10.)

Absent clearly established law from the United States Supreme Court, Petitioner is not entitled to federal habeas corpus relief on this claim. *See* 28 U.S.C. 2254(d)(1). The Idaho Court of Appeals was correct in concluding that, under the current status of the law, Petitioner is entitled either to be represented by counsel, or to represent himself, but not both. Even if the jail wrongfully interfered with Petitioner's pro se access to the courts, the fact that his lawyer had full access to the courts on Petitioner's behalf overcomes any pro se deficiencies, for purposes of protection of his recognized constitutional rights in the criminal proceedings. Finally, Petitioner is not entitled to an

**MEMORANDUM DECISION AND ORDER - 9**

extension of the law in a federal habeas corpus case. *See Teague v. Lane*, 489 U.S. 288 (1989).

2. **Claim Three (2)**

A. *Statement of the Claim*

Claim Three has been limited to subclaim (2), that the jury's exposure to facts not in evidence deprived Petitioner of the right to confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment when the prosecutor showed a video tape recording of the crime scene during his opening statement but did not later ask to have the video admitted into evidence.

B. *Idaho Appellate Court Decision*

At trial, Petitioner's counsel did not object to the fact that the prosecutor played a videotape of the crime scene during opening argument without ever having the videotape admitted into evidence. The jury did not have the videotape in its possession during deliberation. Because there had been no contemporaneous objection and this claim was first brought on appeal, the Idaho Court of Appeals addressed the claim only in the context of fundamental error. (State's Lodging C-5, pp.6-7.)

Petitioner argued that the playing of the videotape without its admission into evidence violated his constitutional right to confrontation and cross-examination and tainted the entire trial. The Idaho Court of Appeals concluded that this circumstance did not amount to fundamental error, based on the following procedural facts:

In this case, because the videotape was not admitted into evidence, the jury could not view it during deliberations, only during the opening statement. The district court had already overruled Brink's pretrial objection to the videotape and, hence, determined that it would be admissible if proffered. It was played in the courtroom in the presence of counsel and without any objection.

(State's Lodging C-5, p. 7.)

### C. *Clearly-Established Federal Law and Discussion*

There is no United States Supreme Court precedent on the Confrontation Clause particularly on point with the facts of Petitioner's case—where the evidence at issue is not testimonial. In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held that "[a] defendant is deprived of his rights under the Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant." The *Bruton* Court observed: "Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently." *Id.* at 135.

In a later case, the Supreme Court held that a codefendant's confessionary statement was admissible, so long as the defendant's name and any references to the defendant were redacted from the statement, and the jury was instructed not to use the confession in any way against the defendant. *Richardson v. Marsh*, 481 U.S. 200, 201–02

**MEMORANDUM DECISION AND ORDER - 11**

(1987). The *Bruton* rule does not apply when the evidence does not expressly implicate the defendant or was not facially incriminating. 481 U.S. at 207-08.

 In a case with a slightly different fact pattern, *Frazier v. Cupp*, 394 U.S. 731, 735 (1969), the Supreme Court held that *Bruton* did not apply where the prosecution's opening statement summarized inculpatory testimony the State expected the defendant's accomplice to give, but the accomplice later refused to testify.

The crux of this matter depends on whether Petitioner's case is similar enough to any of these cases to warrant relief. In *Frazier*, where the Court held that a summary of an inculpatory statement in an opening argument did *not* violate the Confrontation Clause, the Court reasoned:

> It may be that some remarks included in an opening or closing statement could be so prejudicial that a finding of error, or even constitutional error, would be unavoidable. But here we have no more than an objective summary of evidence which the prosecutor reasonably expected to produce. Many things might happen during the course of the trial which would prevent the presentation of all the evidence described in advance. Certainly not every variance between the advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been given. Even if it is unreasonable to assume that a jury can disregard a coconspirator's statement when introduced against one of two joint defendants, it does not seem at all remarkable to assume that the jury will ordinarily be able to limit its consideration to the evidence introduced during the trial.

*Frazier v. Cupp*, 394 U.S. 731, 736 (1969).

The United States Supreme Court has since clarified:

> The abuses that the Court has identified as prompting the adoption of the Confrontation Clause shared the following two characteristics: (a) they

**MEMORANDUM DECISION AND ORDER - 12**

involved out-of-court statements having the primary purpose of accusing a targeted individual of engaging in criminal conduct and (b) they involved formalized statements such as affidavits, depositions, prior testimony, or confessions. In all but one of the post-*Crawford* cases in which a Confrontation Clause violation has been found, both of these characteristics were present.

*Williams v. Illinois*, 132 S. Ct. 2221, 2242 (2012).[1] Though *Williams* was issued after the Idaho Supreme Court considered Petitioner's argument in his petition for review and therefore not within the scope of governing precedent available to the Idaho appellate courts during consideration of Petitioner's state court appeal, the case confirms that the thrust of Confrontation Clause jurisprudence is to address testimonial evidence.

The facts of Petitioner's case do not violate either of these principles underlying the Confrontation Clause—a formalized statement made for the primary purpose of accusing Petitioner of committing a crime is *not* at issue. Rather, the videotape and the prosecutor's observations about the videotape were more akin to an objective summary of the evidence than to a pictorial testament of Petitioner's guilt. The prosecutor prefaced the showing of the video with: "This is the entrance to that house." (State's Lodging A-7, p. 5.)  The next statement the prosecutor made was: "In that underground house, police found Brent Lillevold, age 50, of Twin Falls, shot to death on the couch"—another objective remark.

---

[1]     In *Crawford v. Washington*, 541 U.S. 36, 59 (2004), the Court held that "[t]estimonial statements of witnesses absent from trial [can be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."

**MEMORANDUM DECISION AND ORDER - 13**

Petitioner argues that the video showed the body in the position it rested after having been moved by others—not in the position the victim came to rest as he expired. However, the prosecutor made no reference that would have led the jury to believe that the victim had expired in that position, but said that this was the position in which the police found the victim. During trial, the jury heard testimony about the shooting and the aftermath, from which they could draw their conclusions about how, when, and where Lillevold died. In addition, the jury was instructed that that the opening arguments were not to be considered as evidence. (State's Lodging A-3, p. 401.)

Petitioner has not shown that the objective, nontestimonial nature of the videotape violated the Confrontation Clause or prejudiced his defense. The state court's ruling that the showing of the crime scene videotape to the jury during the prosecutor's opening argument without the videotape later being admitted into evidence was not fundamental error is not an unreasonable application of, or contrary to, United States Supreme Court precedent. Therefore, Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d).

  3. **Claim Four**

     A. *Statement of the Claim*

Claim Four is that Petitioner's First, Fifth, Sixth, and Fourteenth Amendment rights were violated because he was not appointed experts to review the "forensic

**MEMORANDUM DECISION AND ORDER - 14**

evidence, ballistics, or blood evidence"—limited here to an ineffective assistance of counsel theory only.

Petitioner believed that the State's expert testified at trial that u-shaped areas on the floor that were not covered with blood spatter were the shoe prints where *Petitioner* was standing when he shot the victim. (State's Lodging A-5, p. 296-97.) Petitioner argued that this evidence surprised his defense, and he was entitled to a new trial and resources to conduct forensic testing—particularly the testing of Petitioner's boots to determine whether there was blood spatter on them. This evidence would lend support to Petitioner's theory that the victim was the aggressor, because he had been advancing toward Petitioner when shot, argued Petitioner. (*Id.*)

### B. *Idaho Court Decisions*

The trial court determined that Petitioner was mistaken. There was no testimony at trial indicating the void or the unspattered u-shaped spots on the floor showed where Petitioner was standing. The expert testified that the void spots were where the *victim* was standing. (State's Lodgings A-5, pp. 298-302; A-3, pp. 482-85.) In addition, the trial court addressed the very real problem that Petitioner admitted he had cleaned off his boots after the shooting—purposefully tampering with the evidence. (*Id.*)

After reviewing the evidence presented at trial and holding a hearing (State's Lodging A-5, pp. 294-307, 477-85), the state district court denied the motion for new trial on the following grounds:

[E]ven if the court were to order [forensic] tests, the determination of the forensics examiner will not be dispositive of whether Brink was responding to an aggressive threat from Lillevold; blood on the boots will not prove that there was a threat from Lillevold.

Further, the quantity and patterns of blood on the boots, if any, has been seriously compromised by Brink's actions; yet, he requests the court overlook this fact and order an examination to show he acted in self-defense. This cannot be. In his written motion and supporting oral argument, defendant has failed to show why the court should order a forensic examination, as once again, his reasoning relies on evidence previously known to him and his counsel.

Further, even if the court were to grant defendant's motion, it is unsure how the tampered evidence will show Lillevold was an aggressor, or how the evidence would probably produce an acquittal. The court is uncertain how the test requested by Brink would show that the victim was advancing in an aggressive manner.

(State's Lodging A-3, pp. 485-86.)

Rejecting Petitioner's claim again as an ineffective assistance claim on post-conviction review, the state district judge, Randy Stoker, referred to the reasoning from the motion for a new trial: "When Judge Bevan examined this issue post trial the Court concluded that the appointment of an expert would serve no legitimate purpose in this case. [The claim] is without merit because [Petitioner] has failed to establish prejudice." (State's Lodging D-4, p. 904.)

On post-conviction appellate review, the Idaho Court of Appeals agreed, explaining:

In order to succeed on an ineffective assistance of counsel claim based on counsel's failure to procure an expert witness, the accused must assert facts that would have been discovered by additional investigation and should

**MEMORANDUM DECISION AND ORDER - 16**

offer expert testimony that would have been produced if the expert had been hired. Here, Brink speculated that, had he been able to present a forensic expert at trial, he could have proven the distance between Brink and the victim at the time of the shooting. Brink failed to establish the benefit that such expert testimony would have provided and made no proffer as to what an expert would have testified to. Accordingly, even if Brink's counsel was deficient for failing to present expert witness testimony regarding forensic evidence, ballistics or blood evidence, Brink did not alleged [sic] facts to establish a reasonable probability that, had counsel done so, the outcome of the proceedings would have been different.

(State's Lodging E-21, p.6.)

### C. *Clearly-Established Law and Discussion*

The clearly-established law governing a claim of ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984). There, the United States Supreme Court determined that, to succeed on an ineffective assistance claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and that (2) the petitioner was prejudiced by the deficient performance. *Id*. at 684.

In assessing whether trial counsel's representation fell below an objective standard of competence under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight. *Id*. at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*.

**MEMORANDUM DECISION AND ORDER - 17**

The *Strickland* Court outlined how to use the factors of deficient performance and prejudice to assess an ineffective assistance claim:

> These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 690-91.

Prejudice under these circumstances means there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* at 694.

A petitioner must establish both incompetence and prejudice to prove an ineffective assistance of counsel case. 466 U.S. at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial. *Id.*

The foregoing standard, giving deference to counsel's decisionmaking, is the de novo standard of review. Another layer of deference—to the state court decision—is

**MEMORANDUM DECISION AND ORDER - 18**

afforded under AEDPA. In giving guidance to district courts reviewing *Strickland* claims

on habeas corpus review, the United States Supreme Court explained:

> The pivotal question is whether the state court's application of the
> *Strickland* standard was unreasonable. This is different from asking
> whether defense counsel's performance fell below *Strickland*'s standard.
> Were that the inquiry, the analysis would be no different than if, for
> example, this Court were adjudicating a *Strickland* claim on direct review
> of a criminal conviction in a United States district court. Under AEDPA,
> though, it is a necessary premise that the two questions are different. For
> purposes of § 2254(d)(1), "an unreasonable application of federal law is
> different from an incorrect application of federal law." *Williams*, *supra*, at
> 410, 120 S.Ct. 1495. A state court must be granted a deference and latitude
> that are not in operation when the case involves review under the *Strickland*
> standard itself.

*Richter*, 562 U.S. at 101.

Here, the Court first reviews the performance prong of *Strickland*. The record

reflects that Petitioner's first counsel, Marilyn Paul, filed an ex-parte motion for expert

witness fees and expenses (forensic scientists)to engage a defense expert named Dr.

Raymond Grimsbo, and that the trial court granted the motion in January 2006, during the

course of pretrial proceedings. (State's Lodgings A-8, A-9.) When Petitioner's later-

appointed attorney, Thomas Kershaw, appeared, he filed a motion for appointment of

forensic expert in August 2006 (State's Lodging A-2, pp. 216-17), but there is no

indication that the trial court ever ruled on that motion or counsel ever followed up on it.

This may have been because he realized the same motion had already been granted, or it

may have been the result of strategy or lack of diligence, but nothing in the record

**MEMORANDUM DECISION AND ORDER - 19**

enlightens this inquiry.[2] Without reference to a particular place in the record, Petitioner asserts that "the clerks record indicates that both motions for expert witness were granted as was the request for expenses for same, it is therefore a complete denial of due process that Kershaw would not access those funds and provide and expert at trial." (Dkt. 57, p. 5 (verbatim).)

With little evidence upon which to judge the performance prong, the Court turns to the prejudice prong (which often informs evaluation of the performance prong), as did the Idaho Court of Appeals. Upon a review of the entire record, the Court concludes that the Idaho Court of Appeals' decision that no prejudice resulted from the lack of defense expert is not an unreasonable application of *Strickland*. Petitioner has not shown that an expert witness would have provided support for his theory. Even if the shooter and the victim had been standing relatively close to each other, the distance does not mean that the victim had been advancing *in an aggressive manner* at the time he was shot. The jury was already aware that the hostages, including the victim, had begun to move forward just before Lillevold was shot, acting on Petitioner's demand that they show him where his van was.

At trial, Petitioner claimed that the four people he was holding hostage were his "enemies," and that he was afraid of them, though he jumped into a vehicle with one of

---

[2] On post-conviction review, Petitioner did not want to be represented by counsel, but served as his own counsel. (State's Lodging D-5.) It was at that stage of the proceedings that Petitioner should have obtained the trial notes of all of his counsel, the reasoning of his counsel regarding retention of an expert, the billing statements of the expert witness (if any), the preliminary opinions of the expert witness (if any), and other information about a defense forensics expert.

**MEMORANDUM DECISION AND ORDER - 20**

them after the shooting and drove away to dispose of the gun. Petitioner focused his insults and inquiries during the gun incident on only Lillevold. Just before the gunshot, Petitioner had ordered Lillevold to take him to the van, and so Lillevold and his girlfriend, Shelly, began moving forward from the couch where they had been sitting. Petitioner testified that he, himself, did not turn around to begin to leave. (State's Lodging A-6, p. 708.)

Petitioner testified that Shelly "had a hold of the lip of the purse" and "acted like she was trying to hand it to [Lillevold]." (*Id.*, p. 709.) Petitioner testified that his four enemies then advanced upon him and attacked at the same time, with Lillevold simultaneously reaching into Shelly's purse for a handgun with one hand and reaching toward Petitioner with the other to try to grab the shotgun. (*Id.*, pp. 709-10, 756.) As Petitioner tried to shift his position to counter the four people advancing on him, his finger was pushed into the trigger, and he shot Lillevold at close range. (*Id.*, p. 711.) Petitioner testified at trial that he pulled the trigger a little on purpose and a little on accident, because he was scared and reaching for it to shoot the advancing people, but in the process, his hand hit the trigger anyway. (*Id.*, p. 712.)

The eyewitnesses' stories largely agreed that, as Petitioner held them all captive in the basement room with the couch, the only defensive actions that were taken came from Shelly, who (1) called Petitioner vulgar names and talked to him at length in what has been described as an irritating manner, (2) looked in her purse for a knife and money

**MEMORANDUM DECISION AND ORDER - 21**

when Petitioner asked her to and then continued to rummage through her purse even after

he told her to put the purse down, and (3) tossed a handful of change toward Petitioner

when he asked them for gas money. The eyewitness testimony showed that the three

others—Lillevold, Grob, and "Shaggy"—were unarmed, passive, and compliant with

Petitioner's requests, as they faced the loaded sawed-off shotgun. Only Petitioner's

testimony is inconsistent, alleging that the four people all physically attacked him.

(State's Lodging A-6.)

At trial, Petitioner's trial counsel emphasized the fact that the State's experts had

testified at the grand jury hearing that the shot could have been as close as eighteen

inches, but at trial they changed their estimate to three to four feet. (Id., p. 957.) The

State's experts explained that the added information of the footprint position and a

comparison of Lillevold's wound to Dr. DiMaio's *Book on Gunshot Wounds*, Second

Edition, influenced them to revise their estimation. (State's Lodging A-6, p. 123; pp. 960-

61.)

After the shooting, Petitioner disposed of the shotgun, wiped down his boots, and

told investigators a story that he later admitted was not altogether true. Petitioner's

testimony at trial was internally inconsistent in several obvious ways, which undoubtedly

damaged his credibility.

The problematic features of Petitioner's position that he was on the defensive, not

the offensive, were succinctly articulated in a letter from Petitioner's post-conviction

**MEMORANDUM DECISION AND ORDER - 22**

appellate counsel, Deborah Whipple, written after she had searched the record to

determine whether there were meritorious claims to assert on appeal. This reasoning also

applies to an analysis of whether Petitioner's defense was prejudiced by the lack of an

expert witness to show where Petitioner was standing when he fired the shotgun.

The jury was instructed that Idaho law prohibits an aggressor or provoker of an

altercation in which another person is killed from claiming self-defense unless the

aggressor in good faith first withdraws from further aggressive action. *See State v.

Turner*, 38 P.3d 1285, 1290-91 (Idaho Ct. App. 2001). *Turner*'s facts are very similar to

Petitioner's facts. Petitioner does not mention withdrawal before he shot Lillevold:

> [Lillevold] never got his hand on [my] gun. I said he reached for it. I
> would have been stupid to let him, I shot him before he could and before
> they could all reach me at once.

(Dkt. 57, p. 20.)

Upon her review of the record, Ms. Whipple reported to Petitioner:

> I realize that these people were inside your house stealing very
> valuable goods. Your aggravation and distress at this is certainly
> understandable. However, the state's argument will be that you were the
> aggressor because you entered the house after they were already inside and,
> instead of leaving the house and calling the police to report a burglary as
> soon as you heard them, you picked up the sawed off shotgun from its place
> by the washer and entered the room they were in to confront them. The
> state will argue that this was an action making you the aggressor. And, I
> can't see anything that I can point to after that act to demonstrate that you
> in good faith withdrew.

(Exhibits to Dkt. 3, Exhibit 173.)

**MEMORANDUM DECISION AND ORDER - 23**

Petitioner's self-defense argument ignores the obvious problems Ms. Whipple identified. Even if Petitioner could show with additional forensic evidence[3] that he shot Lillevold from eighteen inches away—as Lillevold was reaching for the sawed-off shotgun with one hand and reaching into Shelly's purse with his other hand—the vast majority of evidence still points to Petitioner as the aggressor. In such instance, Lillevold still remained in the defensive position in trying to eradicate the threat of harm from the shotgun, and Petitioner remained the aggressor because he had not put the gun down before Lillevold advanced forward.

Petitioner argues that the testimony of the three eyewitnesses is untrustworthy. However, witness credibility (including Petitioner's credibility) was an issue the jury considered before it decided to convict Petitioner. The Court presumes the jury resolved the discrepancy between Petitioner's testimony and the other eyewitnesses' testimony reasonably, because sufficient evidence supports the verdict. The Court concludes that— even with the new evidence from an expert opinion that the victim could have been shot from eighteen inches away— there is no reasonable probability that the result of the proceeding would have been different. It is extremely unlikely that additional forensic evidence would have aided Petitioner's defense, in light of the totality of evidence, including the witness testimony; the evidence of Petitioner's intent and preparations before the shooting; the threats of death or serious injury Petitioner made against

---

[3]     This reasoning applies to all of the forensic, ballistics, or blood evidence testing Petitioner has requested throughout his various actions, including testing on his boots, his clothing, his vest, and the blood on the walls and near the doorway.

**MEMORANDUM DECISION AND ORDER - 24**

Lillevold before the shooting; the threats Petitioner made against another witness, Gooch, after the shooting; the unlikely nature of Petitioner's story; and Petitioner's credibility issues.

For these reasons, even if trial counsel failed to consult with a forensics expert, Petitioner has not shown either deficient performance or prejudice from the lack of a forensics expert. Counsel is not deficient in an area where an investigation would not have been fruitful for the defense. The overwhelming weight of the evidence supports his conviction. Accordingly, the *Strickland* claim fails to warrant relief.

### 4.  Petitioner's *Miranda* Claim

In his response brief, Petitioner asserts that this Court, in its previous decision, "did not address Petitioner's *Miranda* claim from Claim Three C in claim Five" as it indicated it would. (Dkt. 37, p. 14.) Petitioner misunderstands the Court's prior Order, which stated, as to any of the subclaims asserted in Claim Three: "To the extent Petitioner attempted to raise these claims on post-conviction as prosecutorial misconduct claims or claims that his counsel performed ineffectively by failing to raise the prosecutorial misconduct claims, the Court addresses these contentions below, as part of Claim Five (prosecutorial misconduct)." (Dkt. 31, p. 21.)

The *Miranda* claim is not a prosecutorial misconduct claim, and, thus did not fall into the prosecutorial misconduct category of claims addressed in Claim Five. In any event, even if it was so classified, the Court determined that the prosecutorial misconduct

**MEMORANDUM DECISION AND ORDER - 25**

claims themselves were procedurally defaulted; thus, categorized either way—as a *Miranda* claim or a prosecutorial misconduct claim—subclaim Three (3) is procedurally defaulted. Because neither cause and prejudice nor a miscarriage of justice was shown, the claim cannot be heard on the merits here.

5. **Summary and Conclusion**

Of the claims in the Petition that were determined to be cognizable on federal habeas corpus review, a number of them are procedurally defaulted. Petitioner was given adequate opportunity to, but did not, show cause and prejudice or a miscarriage of justice to excuse the default. (Dkts. 31, 39.) Therefore, the Court cannot, and has not, addressed the merits of those claims.

As to the three claims that Petitioner has properly exhausted, the Court concludes that they do not warrant habeas corpus relief. Accordingly, the Petition for Writ of Habeas Corpus will be denied and dismissed with prejudice.

## ORDER

**IT IS ORDERED:**

1. Petitioner's Third Motion for Extension of Time to file Reply (Traverse) (Dkt. 56) is GRANTED. The Reply (Traverse) (Dkt. 57) has been considered.

2. The Petition for Writ of Habeas Corpus (Dkt. 3) is DENIED and DISMISSED with prejudice.

**MEMORANDUM DECISION AND ORDER - 26**

3. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: September 13, 2016

Edward J. Lodge
United States District Judge

**MEMORANDUM DECISION AND ORDER - 27**